# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY BOGARIN,

Petitioner,

v.

S. HATTON, Warden, et al.,

Respondents.

Case No.: 16cv2793-BTM (MSB)

**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Anthony Bogarin (hereinafter "Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a First Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 29.) He was convicted in the San Diego County Superior Court of one count of attempted first degree burglary, and sentenced to 35 years to life, enhanced by two prior burglary convictions. (Id. at 1-2.) He claims his federal constitutional rights were violated because insufficient evidence supports the element of attempted burglary requiring a direct but ineffective step toward the commission of a burglary (claim one), because the evidence of his two prior burglary convictions admitted at trial to show intent unfairly portrayed him as having a criminal disposition because they were irrelevant since he conceded intent (claim two), and due to ineffective assistance of trial counsel in conceding intent, presenting a legally invalid defense, and forgoing a viable defense (claim three). (Id. at 6-20.)

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 11, 42-43.) Respondent argues federal habeas relief is not available as to claims one and two because the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. (ECF No. 42 at 13-19.) Respondent contends state court remedies have not been exhausted as to claim three, but it should be denied as lacking merit. (Id. at 19-22.)

Petitioner has filed a Traverse. (ECF No. 47.) He contends he presented claim three to the state supreme court in a pro se habeas petition and it is therefore exhausted, requests an evidentiary hearing, and argues he is entitled to federal habeas relief. (Id. at 6-19.)

As set forth below, the Court finds claim three is exhausted, an evidentiary hearing is unwarranted, and federal habeas relief is unavailable because the state court adjudication of all claims is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court recommends the First Amended Petition be denied.

## I.    <u>PROCEDURAL BACKGROUND</u>

In a one-count Information filed in the San Diego County Superior Court on August 11, 2014, Petitioner was charged with attempted first degree burglary in violation of California Penal Code §§ 459 and 664. (Lodgment No. 4, Clerk's Transcript ["CT"] at 12-15.) The Information alleged the attempted burglary was of an inhabited dwelling within the meaning of California Penal Code § 460, which was occupied at the time with someone other than an accomplice within the meaning of California Penal Code § 667.6(c)(21). (Id.) The Information also alleged Petitioner had two prior felony convictions for burglary which constituted "prison priors" within the meaning of California Penal Code §§ 667.5(b) and 668, as well as "serious" felony convictions within the meaning of California Penal Code §§ 667(a)(1), 668 and 1192.7(c), and "strikes" within the meaning of California Penal Code §§ 667(b)-(i), 668 and 1170.12. (Id.)

On October 31, 2014, a jury found Petitioner guilty of attempted burglary, and returned true findings that the attempted burglary was of an inhabited dwelling occupied

by a person other than an accomplice. (CT 214.) The prior conviction allegations were found true beyond a reasonable doubt at a bifurcated bench trial, and on January 16, 2015, Petitioner was sentenced to 35 years to life in state prison. (CT 215-18.)

Petitioner appealed, raising claims two and three presented here. (Lodgment Nos. 5-7.) The appellate court affirmed. (Lodgment No. 8, People v. Bogarin, No. D067390, slip op. (Cal.App.Ct. Mar. 29, 2016).) He filed a petition for review in the state supreme court raising the same claims. (Lodgment No. 9.) The petition for review was summarily denied on June 8, 2016. (Lodgment No. 10.)

After Petitioner initiated this action he was granted a stay to exhaust state court remedies. (ECF No. 22.) He raised claim three in a superior court habeas petition filed on August 14, 2017, which was denied for failure to state a prima facie claim for relief. (Suppl. Lodgment Nos. 1-2.) He presented claim three to the appellate court in a habeas petition filed on November 14, 2017, which was also denied for failure to state a prima facie claim for relief. (Suppl. Lodgment Nos. 3-4.) He presented claim three to the state supreme court in a habeas petition filed on January 4, 2018, which was summarily denied. (Suppl. Lodgment Nos. 5-6.)

## II.   TRIAL PROCEEDINGS

Christina Galvan testified that she was in bed asleep at 9:30 a.m. on April 18, 2014, in the house she shared with her father, who was at work. (Lodgment No. 1, Reporter's Tr. ["RT"] at 52-53.) She awoke when the doorbell rang about 25 times. (RT 53.) Her two small dogs were outside and began to bark as usual when someone came to the door. (RT 66-67, 82-83.) She walked down the hall, looked through the peephole in the front door, and saw Petitioner knocking on the door, ringing the doorbell, jiggling the door handle and leaning into the door with his shoulder. (RT 60-61.) He knocked on the door about as many times as he rang the doorbell, and was "looking around nervously kind of toward the window." (RT 61-62.) He was wearing a bicycle helmet and a backpack. (RT 63.) Christina went back to her room and called her father, who told her to call 911. (RT 65.) A recording of her 911 call was played for the jury and a transcript is in the record.

(RT 79; CT 42-47.) While she was in her bedroom on the telephone she heard trash cans outside her window being moved. (RT 66-67.) An area on the side of the house leads from the front of the house through an area underneath her bedroom window where the trash cans are kept, ending at a gate into the backyard which is always locked. (RT 67-68.) The dogs were confined to an area on the opposite side of the house to prevent them from getting into the backyard swimming pool, but their barking can be heard from the street in front of the house. (RT 83-85.)

John Galvin testified that he lives with his daughter Christina, who called him at work about 9:15 a.m. on April 18, 2014; she was panicked and said there was someone pushing at the door, banging and ringing the doorbell like crazy. (RT 91-92.) He told her to call 911 and that he was on his way; he worked about ten miles away and called 911 on his way home. (RT 93.) When he arrived in his neighborhood the police had a suspect sitting on a curb, and his daughter was with the police at their house. (RT 95.) His large plastic trash bins had been moved a few feet from their usual place up against a gate leading directly into the backyard, which he keeps locked for legal and safety reasons regarding the swimming pool and has not opened in at least fifteen years. (RT 96-98.)

Oskar Posada, a San Diego Police Officer, testified that on April 18, 2014, about 9:20 a.m., he responded to a report of a burglary in progress. (RT 123-24.) He encountered Petitioner, who matched the description of the burglary suspect, riding a bicycle about a block from the house where the burglary was reported. (RT 124-25.) Petitioner did not resist in any way and was cooperative.[1] (RT 129.)

Although Petitioner waived his right to a jury trial on his priors, and despite the offer of defense counsel to concede intent, a pre-trial motion to introduce evidence of the two

---

[1] Petitioner made a statement to the police at that time which the prosecutor decided not to present to the jury: "Defendant explained that an unidentified person at the trolley told him there was construction work to be done, and that person had given him verbal instructions to get to a house where he was supposed to meet someone named Gonzalez. Defendant stated that he did not know the address, and he did not have any directions written down on his person. Defendant stated that the directions were in his head. Defendant explained that he only rang the doorbell one time. No one answered the door, so he walked away." (CT 20.)

16cv2793-BTM (MSB)

prior burglary convictions by the prosecutor was granted, with the evidence limited to similarities with the instant crime to show intent to commit burglary. (RT 8-22.) Patricia Ramirez testified that she was home with her six-year old daughter on January 3, 2007, when, about 10:40 a.m., someone rang her doorbell at least 12 times, knocked on the door at least five times, and repeatedly jumped up to look through the window on top of her door. (RT 103-05.) When she noticed a screen in her bathroom window missing, she and her daughter hid underneath a car in the garage and called the police. (RT 106.) The police arrested the man, who had her jewelry in his pocket. (RT 107.) Bobby Rollins testified that on January 3, 2007, he was working as a San Diego Police Detective and responded to the Ramirez house, where Petitioner was found in a bedroom in possession of money and a watch belonging to Ramirez. (RT 110-12.) Petitioner tried to enter the house by breaking a bathroom window while standing on garbage cans, and then climbed over a gate into the backyard and entered through a sliding door after removing a screen. (RT 113-14.)

Michelle Schneider, a Chula Vista Police Officer, testified that on December 30, 2003, about 2:00 p.m., she responded to a burglary call at the residence of Raul and Lycia Beanes. (RT 116-17.) Mr. Beanes reported that when he returned home that day he noticed broken glass on the floor and saw a person with a backpack inside the house. (RT 118.) That person was later identified as Petitioner, and was arrested with jewelry and money belonging to Mr. and Mrs. Beanes in his backpack. (RT 118-21.)

The People rested. (RT 143.) The parties stipulated that Petitioner was working as a laborer during the week of April 13, 2014, but did not work Friday April 18, that he received $139.80 for the week's work, and he entered guilty pleas to the 2003 and 2007 burglaries. (RT 179.) The defense rested and there was no rebuttal. (Id.)

The jury was instructed the prosecution was required to prove two elements of attempted burglary, that Petitioner intended to commit a burglary and that he "took a direct but ineffective step toward committing burglary." (RT 191.) The prosecutor argued in closing that the element of a direct but ineffective step was satisfied by Petitioner knocking and ringing the doorbell to see if someone was home, jiggling the door handle and trying

to push the door open with his shoulder, and then going to the side of the house to maybe break a window or climb the gate into the backyard as he had done in his other burglaries, and that he would have entered the house but for the strong front door, the locked back gate and the barking dogs. (RT 197-202.) The prosecutor argued intent was shown from his past and present behavior. (RT 202-04.)

Defense counsel argued: "[T]here is a clear showing of a conflict between intention and actions. It is clear that he at least at some point was intending to do something, intending to do something against the law, but he did not follow through, and therefore he is not guilty of attempted burglary." (RT 206.) Defense counsel argued that unlike the prior offenses, Petitioner did not jump a gate, break a window, go into the backyard or enter the house, and knocking on a door and ringing a doorbell is at best an indication of planning or intent, not a direct step toward committing a burglary. (RT 206-11.) Counsel argued that some of the details testified to by Christina Galvin came to light for the first time in court and were not contained in her 911 call, such as Petitioner attempting to push the door open and looking suspiciously at a window. (RT 216-17.) Counsel argued that the trash cans were out of place by only a foot and Mr. Galvin may have been mistaken they were moved, that Christina did not hear the gate rattle as if Petitioner had tried to open it or climb into the backyard, and that he was not scared away by the two small dogs because they were penned up on the other side of the house. (RT 211-16.) Counsel argued that even if Petitioner intended to burglarize the house as he had done in the past, he changed his mind and left freely and voluntarily before he committed a direct step towards a burglary, as shown by the dissimilarities with his prior offenses, the fact that he did not run from the police but cooperated with them, and did not need the money because he had been working all week. (RT 211-13.)

After deliberating about an hour, the jury sent a note asking for a replay of the 911 recording, a read back of defense counsel's closing argument, and stating they "may need an explanation of 'Direct Step' toward committing a burglary." (CT 212.) The 911 call was replayed, they were informed that argument of counsel was not evidence and would

not be provided, and were directed to jury instruction number 460 for a definition of "Direct Step." (Id.) That instruction as given states:

> A direct step requires more than merely planning or preparing to commit burglary or obtaining or arranging for something needed to commit burglary. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to commit burglary. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

> A person who attempts to commit burglary is guilty of attempted burglary even if, after taking a direct step towards committing the crime, he or she abandoned further efforts to complete the crime or if his or her attempt failed or was interrupted by someone or something beyond his or her control. On the other hand, if a person freely and voluntarily abandons his or her plans before taking a direct step toward committing burglary, then that person is not guilty of attempted burglary.

(RT 191-92; CT 79.)

Ten minutes later the jury found Petitioner guilty of attempted burglary, with true findings that it was of an inhabited dwelling with another person present. (CT 213-14.)

At a bifurcated bench trial held on November 3, 2014, the trial judge found the prior conviction allegations true beyond a reasonable doubt. (CT 215.) On December 4, 2014, Petitioner's motion to dismiss the strikes in the interests of justice based on his limited intellectual functioning was denied after the trial judge found he fell within the spirit of the three strikes law because he committed the instant offense 41 days after being released from prison on his 2007 residential burglary conviction, which itself was committed shortly after he was released from prison on his 2003 residential burglary conviction. (RT 259-60.) He was sentenced to twenty-five years to life on the attempted burglary conviction, plus two consecutive five-year terms on the two prison priors. (RT 260.)

/ / /

/ / /

# III. PETITIONER'S CLAIMS

(1) Insufficient evidence supports the element of a direct but ineffective step toward the commission of a burglary which, unless interrupted, would ordinarily result in a completed crime, because Petitioner abandoned any burglary attempt independently of any outside influence or occurrence prior to committing a direct step. (ECF No. 29 at 6-9.)

(2) Petitioner was denied due process by the introduction of evidence of his prior burglary convictions because they were only relevant to intent which the defense conceded at trial, and therefore unfairly showed he had a criminal disposition. (Id. at 10-14.)

(3) Petitioner received ineffective assistance of counsel due to defense counsel conceding intent and presenting a legally invalid defense that he abandoned his attempt to burglarize the house after taking a direct but ineffective step, which amounted to a concession of guilt. (Id. at 15-20.) He contends counsel should have argued that he had been in the neighborhood with a work crew all week and knocked on the door believing he was reporting for work, which was a viable defense in light of his police statement, the trial stipulation and his limited intellectual functioning. (Id.)

# IV. DISCUSSION

For the following reasons, the Court finds Petitioner has exhausted state court remedies as to claim three, an evidentiary hearing is unwarranted, and habeas relief is unavailable because the state court adjudication of all claims is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts.

## A. Standard of Review

In order to obtain federal habeas relief with respect to a claim adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).  Section 2254(d) is a threshold requirement, and even if it is satisfied, or does not apply, a petitioner must still show a federal constitutional violation occurred in order to obtain relief.  <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  <u>Id.</u> at 407. In order to satisfy § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B.    Claim One

Petitioner first alleges insufficient evidence was presented at trial to support the element of attempted burglary requiring a direct but ineffective step toward the commission of a burglary which, unless interrupted, would ordinarily result in a burglary.  (ECF No. 29 at 7.)  He argues here, as he did to the jury, that even if he intended to commit a burglary, he abandoned the effort on his own, independent of any outside influence, prior to taking a direct step toward the commission of burglary.  (<u>Id.</u> at 7-9.)

Respondent answers that the state court adjudication of this claim, on the basis the jury could draw a reasonable inference Petitioner took a direct but ineffective step toward a burglary from the evidence he repeatedly rang the doorbell and knocked on the door to determine if anyone was home, jiggled the doorknob and leaned into the door with his shoulder in an attempt to open the door, and moved the trash cans in front of a locked gate in an attempt to enter the backyard, is not based on an unreasonable determination of the facts, and is neither contrary to, nor an unreasonable application of, clearly established

federal law which provides that federal habeas relief is available "only where 'it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'"  (ECF No. 42 at 13-17 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)).)

Claim one was presented to the state supreme court in a petition for review. (Lodgment No. 9.)  The petition was denied with an order which stated: "Petition for review is denied."  (Lodgment No. 10, People v. Bogarin, No. S234222, order (June 8, 2016).)  It was presented to the state appellate court on direct appeal and denied in a written opinion. (Lodgment Nos. 5-8.)  There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991).  The Court will look through the silent denial by the state supreme court to the appellate court opinion, which states:

> Bogarin contends the evidence is insufficient to support his conviction of attempted first degree burglary.  Although he conceded at trial that he had the specific intent to commit the burglary of Galvan's house, he argues there was insufficient evidence to support a finding he committed a direct step toward the commission of a burglary.  He argues the evidence supports, at most, a finding he committed only acts in preparation for, or the planning of, a burglary of Galvan's house.

> A

> When a defendant challenges the sufficiency of the evidence to support a judgment or finding, we apply the substantial evidence standard of review. Generally, our task "is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, citing *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The substantial evidence standard of review involves two steps. "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. . . . [Citation.] '(I)f the word "substantial" (is to mean) anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a reasonable trier of fact could have found for the respondent based on the whole record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633, fns. omitted.) The standard of review is the same in cases in which the prosecution relies primarily on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.)

B

"An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission." (*People v. Kipp* (1998) 18 Cal.4th 349, 376; see also Pen.Code, § 21a ("An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.").) The required direct act "must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime." (*Kipp*, at p. 376.)

"Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made." (*People v. Murray* (1859) 14 Cal. 159.) "As simple as it is to state the terminology for the law of attempt, it is not always clear in practice how to apply it. As other courts have observed, '"(m)uch ink has been spilt in an attempt to arrive at a satisfactory standard for telling where preparation ends and attempt begins." [Citation.]'" (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.) "Although a definitive test has proved elusive, we have long recognized that '(w)henever the design of a person to commit crime is clearly

16cv2793-BTM (MSB)

shown, slight acts in furtherance of the design will constitute an attempt.'" (*Ibid*.)

There is no defense of voluntary abandonment to the offense of attempt. (*People v. Dillon* (1983) 34 Cal.3d 441, 454 (*Dillon*).) If a defendant has the requisite intent and commits a direct act toward the commission of the substantive offense, it is irrelevant that the defendant may thereafter have voluntarily abandoned his or her efforts to commit the substantive crime. (*Ibid*.) Alternatively stated, "a last-minute change of heart by the perpetrator should not be permitted to exonerate him." (*Id*. at p. 455.)

C

Based on our review of the record in this case, we conclude there is substantial evidence to support the jury's finding Bogarin committed a direct but ineffectual act toward the commission of burglary of Galvan's house. In her opening statement and closing argument, Bogarin's counsel conceded he had the requisite specific intent to burglarize Galvan's house. Considering the evidence, and all reasonable inferences therefrom, favorably to support the jury's verdict, we conclude there is substantial evidence to support a finding Bogarin committed "slight acts" in furtherance of his plan to burglarize her house and thereby committed the offense of attempted burglary. (*People v. Superior Court* (*Decker*), *supra*, 41 Cal.4th at p. 8.)

The evidence supports findings Bogarin approached Galvan's house and, over a period of five minutes, rang its doorbell about 25 times, repeatedly knocked on the front door, jiggled the doorknob, and leaned or pushed into the door with his shoulder about four times. The evidence also supports a finding Bogarin then went to the side of the house and moved two trash cans that were positioned directly in front of a locked gate before leaving the premises. The jury could reasonably infer Bogarin had the specific intent to burglarize Galvan's house when he approached it. It could also reasonably infer that he committed direct but ineffectual acts toward the commission of that burglary when he presumably attempted to ascertain whether anyone was home by repeatedly ringing the doorbell and knocking on the front door, jiggled the doorknob and leaned or pushed into the door with his shoulder in an unsuccessful attempt to open the door, and moved the two trash cans in front of the side gate in an unsuccessful attempt to enter the backyard through the gate, which he discovered was locked. Considering the evidence and inferences therefrom favorably to support the jury's verdict, we conclude the jury reasonably found Bogarin committed direct but ineffectual acts toward the commission of a burglary of Galvan's house. The jury could reasonably

find, contrary to Bogarin's assertion, that his acts were more than mere preparation for a burglary of Galvan's house.

Although the cases cited by Bogarin are, as he argues, factually apposite to this case, those cases nevertheless do not persuade us to reach a contrary conclusion. (See, e.g., *People v. Staples* (1970) 6 Cal.App.3d 61; *People v. Prince* (2007) 40 Cal.4th 1179.) The fact the defendants in those cases took actions that more demonstratively showed they took direct steps toward the commission of burglaries (e.g., entry of backyard) does not show the actions taken by Bogarin were insufficient to show he committed a direct step toward the burglary of Galvan's house.

Bogarin also argues the evidence is insufficient to support a finding he took a direct step toward the commission of a burglary because there is no evidence his completion of the burglary was prevented by an extraneous or outside influence or circumstance (e.g., a discovery or being frightened off by anyone) and instead supports only an inference he voluntarily abandoned his plan to burglarize Galvan's house before committing any direct step toward its commission. However, as stated above, voluntary abandonment after a direct step toward commission of a burglary is not a defense to a charge of attempted burglary. (*Dillon*, supra, 34 Cal.3d at pp. 454-455.) In any event, the jury could reasonably infer Bogarin voluntarily abandoned his efforts to burglarize Galvan's house because his attempt was frustrated by the locked front door and then the locked side gate. Furthermore, to the extent Bogarin argues the evidence is insufficient to support a finding he committed an appreciable fragment of a burglary, the California Supreme Court expressly rejected the argument that a defendant must commit an actual element of the substantive offense to be guilty of attempt, holding that its prior use of the phrase, "'appreciable fragment of the crime,'" was merely a restatement of the direct step element. (*Dillon*, at p. 454.) Bogarin has not carried his burden on appeal to show the evidence is insufficient to support his conviction of attempted burglary.

(Lodgment No. 8, <u>People v. Bogarin</u>, No. D067390, slip op. at 4-9.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). Petitioner is entitled to federal habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond

a reasonable doubt." Jackson, 443 U.S. at 324. The standards of 28 U.S.C. § 2254(d) require an additional layer of deference in applying the Jackson standard, and this Court "must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' Jackson and Winship to the facts of this case." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)). Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," not as a means of error correction. Harrington v. Richter, 562 U.S. 86, 103 (2011) (quoting Jackson, 443 U.S. at 332 n.5).

The record supports the state court's finding that sufficient evidence exists from which the jury could draw a reasonable inference Petitioner took a direct but ineffective step towards committing a burglary. Christina Galvan testified that after Petitioner repeatedly knocked on the door and rang the doorbell, he jiggled the door handle while leaning into the door with his shoulder. (RT 60-61.) She thereafter heard trash cans being moved on the opposite side of the house from where the dogs were confined. (RT 66.) Her father testified that the trash cans had been moved a few feet from their usual place up against a gate leading into the backyard which was locked and had not been opened in fifteen years. (RT 96-98.) Evidence was also presented Petitioner had burglarized unoccupied homes by breaking a window and entering though a backyard. The jury could have drawn a reasonable inference from the evidence that after Petitioner determined the house was unoccupied by his repeated unanswered ringing of the doorbell and knocking, he tried, but failed, to force his way through the front door, after which he went around the side of the house, moved the trash cans from in front of a gate leading into the backyard, and, finding it locked, only then abandoned his attempt to burglarize the house. Thus, the jury could have drawn a reasonable inference that he made at least two ineffective direct steps toward committing a burglary, attempting to force his way through the front door, and attempting to get into the backyard by moving the trash cans blocking the gate.

Petitioner argues he voluntarily abandoned any attempt to commit a burglary prior to committing a direct act, as shown by his voluntary departure without breaking a window

16cv2793-BTM (MSB)

or entering the backyard, and his cooperation with police. However, the Court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming the jury resolved all conflicts in a manner that supports the verdict. <u>Jackson</u>, 443 U.S. at 319. Even if Petitioner is correct that a reasonable inference could be drawn from the evidence that he abandoned his burglary effort prior to committing a direct act, that does not satisfy his burden of showing the determination by the state court is unreasonable. <u>See</u> <u>Cavazos v. Smith</u>, 565 U.S. 1, 7 (2011) (holding that <u>Jackson</u> "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting <u>Jackson</u>, 443 U.S. at 326); <u>Coleman v. Johnson</u>, 566 U.S. 650, 656 (2012) ("The jury in this case was convinced, and the only question under <u>Jackson</u> is whether that finding was so insupportable as to fall below the threshold of bare rationality.").

Accordingly, in light of the additional layer of deference this Court must give in applying the <u>Jackson</u> standard, as well as the Supreme Court's admonition that federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," <u>Richter</u>, 562 U.S. at 103 (quoting <u>Jackson</u>, 443 U.S. at 332 n.5), the Court finds that the state court state court adjudication of claim one does not reflect "an 'unreasonable application of' <u>Jackson</u> and <u>Winship</u> to the facts of this case." <u>Juan H</u>, 408 F.3d at 1274. The Court also finds that the factual findings upon which the state court's adjudication of claim one rest are objectively reasonable. <u>Miller-El</u>, 537 U.S. at 340. The Court therefore recommends habeas relief be denied as to claim one.

### C.    Claim Two

Petitioner alleges in claim two that he was denied due process by the introduction of evidence of his prior burglary convictions because they were only relevant to his intent, but the defense conceded at trial he intended to commit burglary and argued he changed his mind before taking a direct step toward the commission of an attempted burglary,

leaving the jury to consider his prior convictions only as evidence of a criminal disposition. (ECF No. 29 at 10-14.) Respondent answers that the denial of this claim by the state court, on the basis the evidence was relevant despite the concession of intent, and its admission was harmless and not unduly inflammatory, is not an unreasonable determination of the facts, and cannot be contrary or an unreasonable application of clearly established federal law because there is no "clearly established federal law" providing that the admission of irrelevant or overly prejudicial evidence in a state criminal trial violates federal due process, and even if there is, a finding that the evidence is relevant, which it clearly was, is all that is needed to establish the lack of a federal due process violation. (ECF No. 42 at 17-19.)

Claim two was presented to the state supreme court in a petition for review and summarily denied. (Lodgment Nos. 9-10.) It was presented to the state appellate court on direct appeal and denied in a written opinion. (Lodgment Nos. 5-8.) The Court will look through the silent denial by the state supreme court to the last reasoned state court opinion addressing the claim, the appellate court opinion, which states:

> Bogarin contends the trial court erred by admitting evidence of two of his prior burglary convictions as relevant to prove his intent to commit the alleged burglary.

> ### A

> Before trial, the prosecution filed a motion in limine to allow the admission of evidence under Evidence Code section 1101, subdivision (b) of two of Bogarin's prior burglary convictions to prove his intent to commit the instant offense. In one case, Bogarin was inside the Beaneses' home when they returned, he fled, and was later found with a backpack containing the Beaneses' property. In the other case, Bogarin knocked on the door of Patricia Ramirez's home. When she went to answer the door, Bogarin was already trying to force the door open by turning the knob. He successfully entered the home and took property. The prosecution argued that because Bogarin had the specific intent to commit burglary in those two similar cases, the prior acts evidence was relevant to prove he had the specific intent to burglarize Galvan's house in the instant case. It further argued that the probative value of that prior acts evidence outweighed any prejudicial effect it might have.

Bogarin opposed the motion, arguing the proffered evidence was not relevant because he would concede the element of intent at trial and, in any event, the circumstances in those prior offenses were not sufficiently similar to the circumstances in this case. He also argued that evidence should be excluded as unduly prejudicial under section 352. The trial court granted the prosecution's motion, but limited the evidence to only that relevant to intent and excluded evidence that Ramirez and her child hid in the garage and Bogarin used violence inside the Beaneses' home and thereafter.

At trial, Ramirez testified that on January 3, 2007, she and her young daughter were inside their home when Bogarin repeatedly rang the doorbell and knocked on the front door. He jumped up several times, attempting to look through the door's window. Ramirez went to her bedroom and saw the screen on the bathroom window had been removed. She took her daughter to the garage and they crawled under the car, where she called 911. Police arrived and arrested Bogarin inside the home. Money and jewelry belonging to Ramirez was found in his possession. Retired San Diego Police Detective Bobby Rollins also testified regarding the Ramirez burglary, stating Bogarin had gained entrance to Ramirez's home through a window in the backyard area past a gate.

Chula Vista Police Detective Michelle Schneider testified that on December 30, 2003, she went to the home of Raul and Lydia Beanes to investigate a burglary. When the Beaneses returned home, they found broken window glass on the floor and saw Bogarin coming out of their master bedroom with a backpack. Bogarin ran from the home. He was apprehended by officers and arrested. He had the Beaneses' property inside his backpack.

Bogarin's counsel informed the jury of the parties' stipulation that Bogarin pleaded guilty to the 2003 burglary of the Beaneses' home and the 2007 burglary of Ramirez's home.

B

Section 1101, subdivision (a), states that character evidence is inadmissible unless otherwise provided:

"Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her

16cv2793-BTM (MSB)

conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

However, section 1101, subdivision (b), provides an exception to that general rule of exclusion, stating:

"Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake or accident, . . .) other than his or her disposition to commit such an act." (Italics added.)

Section 1101, subdivision (b), clarifies that the general rule of exclusion of character evidence "does not prohibit admission of evidence of (prior acts) when such evidence is relevant to establish some fact other than the (defendant's) character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. omitted (*Ewoldt*).)

In *Ewoldt*, the California Supreme Court discussed the rules on admissibility of evidence on a defendant's prior acts:

"Subdivision (a) of section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of (prior acts), to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of (prior acts) when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, *supra*, 7 Cal.4th at p. 393, fn. omitted.)

"A person's own prior misconduct may be admissible to show that the charged offense is so similar as to support an inference that the same person committed both acts, or *to show that in light of the prior conduct the person must have harbored a similar intent or motive during the charged offense*." (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1258, italics added.) A prior criminal act is probative of a defendant's intent if it is "sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23 (*Lindberg*).)

Although evidence on prior acts may be admissible under sections 1101, subdivision (b), that evidence may nevertheless be inadmissible under section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A determination of inadmissibility of evidence under section 352 requires the balancing of the probative value of the evidence against its potential prejudicial effect. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 404-405.) "'The prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) Rather, evidence is unduly prejudicial under section 352 only when it uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.)

"On appeal, a trial court's ruling under . . . sections 1101 and 352 is reviewed for abuse of discretion." (*People v. Lewis* (2001) 25 Cal.4th 610, 637; see also *People v. Jones* (2013) 57 Cal.4th 899, 930.) We will not disturb the court's ruling unless it is shown the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Brown* (2003) 31 Cal.4th 518, 534.)

## C

Based on our review of the record, we conclude the trial court did not abuse its discretion under sections 1101, subdivision (b), and 352 by admitting the prosecution's evidence of two of Bogarin's prior burglary convictions. Contrary to Bogarin's assertion, the evidence of his prior burglaries was relevant to prove the element of specific intent in this case despite the fact his counsel conceded he had the specific intent to commit burglary. Because Bogarin pleaded not guilty to the charge of attempted burglary, he put all elements of that offense in dispute at trial. (*People v. Scott* (2011) 52 Cal.4th 452, 470; *Lindberg*, *supra*, 45 Cal.4th at p. 23; *People v. Roldan* (2005) 35 Cal.4th 646, 705-706.) Furthermore, the trial court instructed the jury with CALCRIM No. 460 that, to prove the offense of attempted burglary, the prosecution must prove Bogarin: (1) took a direct but ineffective step toward committing burglary; and (2) intended to commit burglary. Because specific intent is an element of attempted burglary, the prosecution therefore properly proffered evidence on that element, including evidence of Bogarin's two prior burglaries, to prove beyond a reasonable doubt he committed the offense of

attempted burglary. (*Roldan*, at pp. 706–707; *People v. Williams* (1988) 44 Cal.3d 883, 907, fn. 7.) Alternatively stated, the prior offense evidence was relevant to, or probative of, the element of specific intent and therefore not inadmissible based on Bogarin's concession on the issue of specific intent. *People v. Balcom* (1994) 7 Cal.4th 414, cited by Bogarin, is factually inapposite to this case and does not persuade us to reach a contrary conclusion. Furthermore, contrary to Bogarin's assertion, the evidence of his two prior burglaries was not merely cumulative of other evidence of his intent in this case, but rather was quite probative on the element of specific intent. (Cf. *Balcom*, at p. 423.)

Bogarin also asserts the trial court should have excluded the section 1101, subdivision (b), evidence of his two prior burglaries because they were not sufficiently similar to the instant charged attempted burglary to support the inference he probably acted with the same intent in each instance. (*Lindberg*, *supra*, 45 Cal.4th at p. 23.) Contrary to his assertion, the fact the two prior burglaries were completed and the instant charged offense was not, but only attempted, does not make them dissimilar. Rather, sufficient similarity in Bogarin's conduct leading up to the actual, or attempted, burglary during each incident may show he acted with the same intent in each instance. In both the instant case and the Ramirez burglary, Bogarin repeatedly rang the doorbell and knocked on the front door. When no one answered the door, he went around to the side of the home, presumably to find a way to break into the home (e.g., through a window). The fact he successfully broke into Ramirez's home, but not Galvan's home, did not necessarily make those two incidents insufficiently similar for admission of evidence of the Ramirez burglary under section 1101, subdivision (b). Likewise, in both the instant case and the Beanes burglary, Bogarin was found with a backpack. The fact his backpack contained the Beaneses' property after that burglary, but not Galvan's property after the instant charged offense, did not necessarily make those two incidents insufficiently similar for admission of evidence of the Beaneses' burglary under section 1101, subdivision (b). Rather, the trial court reasonably exercised its discretion by concluding the Ramirez and Beanes burglaries were sufficiently similar to the instant charged attempted burglary to support the inference Bogarin probably acted with the same intent in each instance. (*Lindberg*, at p. 23.)

To the extent Bogarin also asserts the trial court should have excluded evidence of the two prior burglaries under section 352 because the probative value of that evidence was outweighed by its probable prejudicial effect, we disagree. The prior burglaries were not so much more egregious or serious than the instant charged offense as to inflame the passions of the jurors.

Although, contrary to the court's order, Ramirez testified she and her daughter hid under a car in the garage, that testimony appeared to be presented in a factual manner that was not unduly emotional or inflammatory. Furthermore, because Bogarin was convicted of burglary in both of the prior cases, the jury presumably did not consider convicting him in this case in order to punish him for his past bad acts. Also, the evidence of his two prior burglaries came from independent sources, thereby supporting its reliability. The court did not abuse its discretion by concluding the evidence of Bogarin's two prior burglaries was not unduly prejudicial or otherwise inadmissible under section 352 and admitting that evidence under section 1101, subdivision (b). (*People v. Kipp*, *supra*, 18 Cal.4th at p. 372.)

D

Assuming arguendo the trial court abused its discretion by admitting evidence of Bogarin's two prior burglaries under section 1101, subdivision (b), we nevertheless conclude he has not carried his burden on appeal to persuade us it is reasonably probable he would have obtained a more favorable result at trial had that evidence been excluded. (*People v. Rivera* (1985) 41 Cal.3d 388, 393; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Contrary to Bogarin's assertion, the purported error in the admission of that evidence did not deny him any right under the federal Constitution. The application of ordinary rules of evidence generally does not impermissibly infringe on a defendant's constitutional rights. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611; *People v. Hall* (1986) 41 Cal.3d 826, 834-835.) Accordingly, we apply the state standard of prejudicial error in determining whether the purported error requires reversal of Bogarin's conviction. (*Rivera*, at p. 393; *Watson*, at p. 836 (error is harmless unless it is reasonably probable a more favorable result would have been obtained).)

Based on our review of the record, we conclude Bogarin probably would not have obtained a more favorable verdict had the evidence of his two prior burglaries been excluded. In his counsel's opening statement and closing argument, the element of specific intent was, in effect, conceded. On the charge of attempted burglary, the crux of the case therefore was whether he took any direct but ineffectual step toward the commission of a burglary. The jury heard the testimony of Galvan and her father, which provided strong proof that Bogarin's actions at Galvan's house were not merely in preparation for a burglary, but instead were direct steps toward the commission of a burglary. The jury could reasonably infer Bogarin repeatedly rang the doorbell and knocked on the door to ascertain whether anyone was inside the house. The jury could further reasonably infer he jiggled the doorknob and

16cv2793-BTM (MSB)

pushed or leaned against the door four times in an attempt to break into the house. The jury could also reasonably infer that when he was unsuccessful in doing so, he went around the side of the house and moved the two trash cans in an attempt to access the backyard and house through the side gate, but abandoned his attempt to burglarize the house after finding the gate was locked. It is unlikely the evidence of Bogarin's two prior burglaries would have changed the jury's inferences regarding his actions in the instant case. Alternatively stated, it is highly unlikely the jury would instead have inferred all of those actions by Bogarin were merely in preparation for, and not direct steps toward, the commission of a burglary. We conclude any error by the court in admitting the evidence of his two prior burglaries was not prejudicial and does not require reversal of his conviction of attempted burglary. (*People v. Rivera*, *supra*, 41 Cal.3d at p. 393; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

(Lodgment No. 8, <u>People v. Bogarin</u>, No. D067390, slip op. at 9-17.)

Petitioner first claims that the introduction of the evidence of his prior burglary convictions violated federal due process because it was irrelevant and therefore admitted only to show he had a criminal disposition. The Ninth Circuit has found that because the United States Supreme Court has specifically reserved ruling on whether introduction of propensity evidence in a state trial could violate federal due process, and has denied certiorari at least four times on the issue since, there is no "clearly established federal law" on that issue, precluding habeas relief where 28 U.S.C. § 2254(d)(1) applies. <u>Alberni v. McDaniel</u>, 458 F.3d 860, 866 (9th Cir. 2006); <u>see also</u> <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009) (recognizing that the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."). Accordingly, to the extent this Court must defer to the state court adjudication of this claim under 28 U.S.C. § 2254(d)(1), the Court cannot grant relief because there is no applicable clearly established federal law. <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008) (holding that the state court could not have unreasonably applied federal law if no clear Supreme Court precedent exists).

Assuming, *arguendo*, Petitioner could satisfy 28 U.S.C. § 2254(d)(1), or could satisfy 28 U.S.C. § 2254(d)(2) by showing that the state court adjudication of his claim was

based on an unreasonable determination of the facts, or otherwise demonstrate that 28 U.S.C. § 2254(d) deference does not apply, he would still be required to show a federal due process violation.  Fry, 551 U.S. at 119-22 (holding that § 2254(d) is a threshold requirement, and even if it is satisfied a petitioner must still show a federal constitutional violation occurred in order to obtain federal habeas relief).  If he can establish that a federal constitutional violation occurred as a result of introduction of the evidence of his prior convictions, then the failure of the state court to recognize such a violation and determine whether it was harmless beyond a reasonable doubt, as opposed to applying the Watson standard as it did in finding it harmless, would satisfy the 28 U.S.C. § 2254(d) threshold. See Chapman v. California, 386 U.S. 18, 24 (1967) (holding "that before a federal constitutional error can be held harmless, the [state] court must be able to declare a belief that it was harmless beyond a reasonable doubt."); Wade v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000) (holding that deference under 28 U.S.C. § 2254(d) does not apply where the state court used a wrong legal standard).

The Court finds, however, that Petitioner has not demonstrated a federal due process violation.  Claims based on state evidentiary rulings are not cognizable on federal habeas unless the admission of the evidence was so prejudicial it rendered a trial fundamentally unfair.  Estelle v. McGuire, 502 U.S. 62, 70-73 (1991); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 897 (9th Cir. 1996); California v. Trombetta, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness."); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991) ("While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.").

A federal due process violation can arise from the introduction of propensity evidence where it might "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," which risks the jury convicting a defendant because

he is "a bad person [who] deserves punishment." <u>Old Chief v. United States</u>, 519 U.S. 172, 180-81 (1997).  Here, the jury was presented with proof specific to the charged offense of attempted burglary apart from the prior conviction evidence.  Direct testimony showed Petitioner tried to force his way into the house through the front door after knocking and ringing the doorbell over 25 times, and that he only left after he walked around to the side of the house opposite the side guarded by dogs where he moved trash cans to reveal a locked gate blocking the entrance to the backyard.  The jury could have reasonably drawn an inference that those were not innocent, everyday actions of a person approaching a home without criminal intent.

Even if Petitioner is correct his actions were consistent with someone looking for and expecting to find a work crew at the house, or some other innocent explanation, it was not fundamentally unfair for the jury to hear evidence of his prior convictions for at least two reasons.  First, although the jury heard he had twice before burglarized unoccupied homes, once entering by breaking a window and once entering through a rear screen door after breaking a window while standing on trash cans, defense counsel pointed out that Petitioner did not break a window or jump the gate into the backyard this time, that merely looking for a way into the house was at most indicative of planning and intent, and that Petitioner was not guilty of attempted burglary because he did not take a direct step toward the commission of a burglary.  Second, the jury was instructed not to consider the evidence of the prior convictions "for any other purpose" than whether Petitioner "acted with the intent to commit burglary in this case."  (RT 190-91.)  They were reminded of that limitation by the prosecutor (RT 203-04) and defense counsel (RT 208) during closing argument. There is no indication the jurors did not follow that instruction, <u>see</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 206-07 (1987) (holding that a federal habeas court presumes jurors follow their instructions), and no indication the prior conviction evidence was not relevant to the intent element of the charged offense, <u>see</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (holding that a determination by a trial judge that the proffered testimony is relevant is entitled to deference in a federal habeas court).  Thus, Petitioner has not established that

the evidence of his prior convictions lured the jury "into declaring guilt on a ground different from proof specific to the offense charged." Old Chief, 519 U.S. at 180-81; Jammal, 926 F.2d at 920 ("Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions.").

In sum, Petitioner has not shown his trial was rendered fundamentally unfair by the introduction of evidence relevant to his intent, limited to that purpose, and which did not preclude, and in fact supported, his defense at trial that despite his initial intent to burglarize the house he was not guilty because he never took a direct step towards the commission of a burglary. For those reasons, and because evidence independent of the prior convictions showed he intended to burglarize the house and took a direct but ineffective step toward commission of a burglary, he has not shown the evidence of his prior convictions is the type that might "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," and risk a conviction because he is "a bad person [who] deserves punishment." Old Chief, 519 U.S. at 180-81. He has not established a federal due process violation. See Jammal, 926 F.3d at 920 ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'") (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1985)).

The Court finds that the state court adjudication of claim two is objectively reasonable within the meaning of 28 U.S.C. § 2254(d), and that even if Petitioner could satisfy that standard he has not established a federal due process violation. The Court recommends denying habeas relief with respect to claim two.

## D.    Claim Three

Petitioner alleges he received ineffective assistance of counsel due to his defense counsel: (1) conceding Petitioner intended to commit a burglary when he first approached the house, (2) presenting a defense that Petitioner abandoned his attempt to commit a burglary after committing a direct act in furtherance of the burglary, which is a legally

invalid defense amounting to a concession of guilt because the jury was instructed that abandoning an effort to burglarize a house after committing a direct act in furtherance of the burglary is not a defense to the crime of attempted burglary, and (3) failing to present a defense that Petitioner knocked on the door believing he was reporting for work, which was a viable defense in light of his limited intellectual functioning, his police statement, and evidence he had been working in the neighborhood with a work crew all week. (ECF No. 29 at 15-20.)

Respondent answers that Petitioner has failed to exhaust state court remedies as to claim three because it was never presented to the California Supreme Court, but it should be denied notwithstanding the failure to exhaust because it is without merit. (ECF No. 42 at 19-22.) Petitioner replies that he presented claim three to the state court on habeas and it is therefore exhausted. (ECF No. 47 at 15-16.)

## 1. Exhaustion

In order to exhaust state judicial remedies, a state prisoner must present the state supreme court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition, Granberry v. Greer, 481 U.S. 129, 133-34 (1987), although the technical requirements for exhaustion may be met if there are no state judicial remedies remaining available. Castille v. Peoples, 489 U.S. 346, 351 (1989); Cassett v. Stewart, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Even if a petitioner fails to exhaust state court remedies, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2); see also Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1992) (holding that a district court can deny a claim which has not been presented to the state court if it does not present a colorable claim for relief).

After Petitioner initiated this action, he filed pro se habeas petitions in the state superior, appellate and supreme courts raising ineffective assistance of counsel claims.

(Suppl. Lodgment Nos. 1, 3, 5.)  Respondent concedes Petitioner argued in his state supreme court habeas petition that defense counsel was ineffective for conceding intent, but contends he never argued that such a concession rose to the level of a legally invalid defense.  (ECF No. 42 at 19-20.)  However, Petitioner alleged in his state supreme court habeas petition that he had been in the neighborhood with a work crew all week, that on the day in question, a Friday, he was looking for the house where he was expected to report for work, and that his counsel rendered ineffective assistance by conceding to the jury that he intended to burglarize the house because it essentially admitted his guilt, which resulted in "down right illegal" treatment by counsel, who was "hostile" and "a [traitor] to his cause," and which was particularly egregious since this is a three-strikes case in which he faced life in prison.  (Suppl. Lodgment No. 5 at 3-4 [ECF No. 43-5 at 5-7].)

"The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants."  Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting Boag v. MacDougall, 454 U.S. 364, 365 (1982)).  Under a liberal construction of Petitioner's pro se filings, the Court finds that he raised claim three in his pro se state supreme court habeas petition where he alleged defense counsel was deficient in conceding intent, which was in essence a concession of guilt and not a "legal" defense because it relied on Petitioner abandoning his burglary attempt after taking a direct but ineffective step toward commission of a burglary, and that counsel failed to present a defense of innocence based on a mistaken belief he was reporting for work when he approached the house.  Id.; see also Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important as to which claims are presented).  However, that finding does not resolve the issue of exhaustion.

Claim three was also presented to the state appellate court in a habeas petition (Suppl. Lodgment No. 3 at 3-4), which denied the claim, stating:

> Bogarin's other claims, all generally claiming that his counsel was ineffective or the prosecution committed misconduct, are simply asserted in a conclusory manner without any supporting argument or explanation.  A

petitioner seeking habeas corpus relief bears a heavy burden to plead and prove sufficient grounds for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) "At the pleading stage, the petition must state a prima facie case for relief. To that end, the petition 'should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations.'" (*In re Martinez* (2009) 46 Cal.4th 945, 955-956.) Conclusory allegations made without any explanation of their factual basis are insufficient to state a prima facie case or warrant an evidentiary hearing. (*People v. Duvall*, *supra*, at p. 474.)

(Suppl. Lodgment No. 4, <u>In re Bogarin</u>, No. D073095, order at 1-2.)

The Court must identify which state court opinion, if any, is subject to 28 U.S.C. § 2254(d). <u>See</u> <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005) ("Before we can apply [the] standards [of 28 U.S.C. § 2254(d)], we must identify the state court decision that is appropriate for our review. When more than one state court has adjudicated a claim, we analyze the last reasoned decision."). If this Court looks through the silent denial by the state supreme court to the state appellate court order, the appellate court order may be an indication Petitioner failed to exhaust state court remedies. <u>See</u> <u>e.g.</u> <u>Seeboth v. Allenby</u>, 789 F.3d 1099, 1104 n.3 (9th Cir 2015) (recognizing that a citation to <u>Duvall</u> in conjunction with a finding that the claims were not pled with particularity is a failure to exhaust because it "constitutes dismissal without prejudice with leave to amend to plead required facts with particularity."). If the Court does not look through the silent denial by the state supreme court, the silent denial is presumed to be an adjudication on the merits and the claim is exhausted. <u>Richter</u>, 562 U.S. at 99-100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). The Court would then apply the provisions of 28 U.S.C. § 2254(d) to the silent denial by the state supreme court. <u>Id.</u> at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be

met by showing there was no reasonable basis [within the meaning of 28 U.S.C. § 2254(d)] for the state court to deny relief.").

The look though doctrine "has universally been applied in cases where the court rendering a reasoned decision and a later court making a summary determination were facing precisely the same issue." Valdez v. Montgomery, 918 F.3d 687, 697 (9th Cir. 2019) (citing Curiel v. Miller, 830 F.3d 864, 870 (9th Cir. 2016) (en banc)) ("When at least one state court has rendered a reasoned decision, but the last state court to reject a prisoner's claim issues an order 'whose text or accompanying opinion does not disclose the reason for the judgment,' we 'look through' the mute decision and presume the higher court agreed with and adopted the reasons given by the lower court.") (quoting Ylst, 501 U.S. at 802-06). The look through doctrine does not apply where the claims or issues are not "precisely the same." Valdez, 918 F.3d at 697 (declining to use look through doctrine in context of timeliness of state habeas petitions because "[w]hether Valdez's second state habeas petition was timely filed in the Court of Appeal is a different and entirely distinct issue from whether his habeas petition in the Superior Court was timely filed.") In addition to the look through doctrine, there is a presumption that a silent denial is an adjudication on the merits of a claim, which "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100 (citing Ylst, 501 U.S. at 803).

The Court declines to look through the state supreme court's silent denial of claim three to the appellate court order because the documentation provided to the state supreme court in support of the claim, which relies in part on Petitioner's intellectual functioning as it relates to his defense, is different than the documentation provided to the appellate court. Petitioner presented a psychological evaluation to the state supreme court which was not presented to the appellate court, and argued it was relevant to the exhaustion of his claim as necessary to present it to this Court. (Suppl. Lodgment No. 5 [ECF No. 43-5 at 65-83].) Because claim three was presented to the state supreme court with different supporting documentation than to the appellate court, which denied it at least in part on the basis it did

not have sufficient supporting documentation, evidence has been presented to rebut the presumption that the state supreme court adopted the lower court's reasoning, and the presumption that the state supreme court's silent denial was on the merits of the claim has not been rebutted.

Thus, the Court finds Petitioner has exhausted state court remedies as to claim three. The silent denial by the state supreme court is presumed to be an adjudication on the merits, and the Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." [2] Richter, 562 U.S. at 102.

## 2. Merits

To establish constitutionally ineffective assistance of counsel, Petitioner must show counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). He must also show counsel's deficient performance prejudiced his defense, which requires showing that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable." Id. For prejudice, there need only be a reasonable probability that the result of the proceeding would have been different absent the error. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Both deficient performance and prejudice must be established to show constitutionally ineffective assistance of counsel. Id. at 697. "Surmounting Strickland's high bar is never

---

[2] Even to the extent it is appropriate to look through the silent denial by the state supreme court to the lower state court order, and even if doing so would result in finding claim three is unexhausted or not adjudicated on the merits in state court, the result would be the same because the Court would find, for the reasons set forth below, that claim three fails under a de novo review. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (holding that irrespective of whether 28 U.S.C. § 2254(d) deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one).

an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

Petitioner first contends defense counsel was deficient in conceding intent. The prosecutor filed a pre-trial motion to introduce evidence of the prior convictions to prove intent under California Evidence Code § 1101(b), which provides an exception to the general prohibition of the admissibility of evidence of character or reputation for criminal acts which are relevant to prove intent. (CT 16-24.) The prosecutor argued intent was at issue not only because the prosecution had the burden of proving intent, but because:

> To police officers, Defendant explained that an unidentified person at the trolley told him there was construction work to be done, and that person had given him verbal instructions to get to a house where he was supposed to meet someone named Gonzalez. Defendant stated that he did not know the address, and he did not have any directions written down on his person. Defendant stated that the directions were in his head. Defendant explained that he only rang the doorbell one time. No one answered the door, so he walked away.

(CT 20.)

Defense counsel opposed the prosecution's motion, stating that:

> I think the - my objection, and I realize, just stepping back for a moment, that 1101(b) was kind of invented for this occasion; that when there are similar occurrences or similar crimes that are alleged against the same defendant where there is particularly a state of mind, but, obviously, more importantly, sometimes identity, that there is exceptions to character evidence coming in. I understand that.
>
> I would ask the court, though, to consider kind of the unique context to this. This is an attempt. And my argument, in essence, is while [Petitioner] may fully have intended to burglarize this home, that he changed his mind. And my argument to the jury, and it is a jury question, I believe, in the reading of CALCRIMS, that they get to decide did he cross that line, swung the bat over the plate and it is already an attempt or not. And so intent, per se, is not really the issue in this case. And so it is made an issue, for example, by, I noticed in [the prosecutor]'s papers, if they choose to or if he chooses to put forth [Petitioner]'s [police] statement at the time. That puts out his denial of having any intent is in that statement, but that still - there are other ways to impeach that statement, there is other evidence, so in my view it is not really a legitimate need to counteract or to prove his intent at that time.

(RT 9-10.)

1    Petitioner's statement to the police was not presented at trial, and defense counsel

2    argued in closing: "[T]here is a clear showing of a conflict between intention and actions.

3    It is clear that he at least at some point was intending to do something, intending to do

4    something against the law, but he did not follow through, and therefore he is not guilty of

5    attempted burglary." (RT 206.) The Supreme Court has stated that:

6           A fair assessment of attorney performance requires that every effort be
            made to eliminate the distorting effects of hindsight, to reconstruct the
7           circumstances of counsel's challenged conduct, and to evaluate the conduct
            from counsel's perspective at that time. Because of the difficulties inherent
8           in making the evaluation, a court must indulge a strong presumption that
            counsel's conduct falls within the wide range of reasonable professional
9           assistance; that is, the defendant must overcome the presumption that, under
            the circumstances, the challenged action 'might be considered sound trial
10          strategy.'

11

12

13   Strickland, 466 U.S. at 689.

14          Defense counsel may have reasonably recognized that lack of intent to commit a

15   burglary was not a viable defense in light of Petitioner's actions at the front door, which

16   were hard to explain as anything other than evincing an intent to burglarize the house,

17   particularly in light of Petitioner's history of burglarizing unoccupied homes, and his

18   statement to the police which differed so drastically from the testimony of the home's

19   occupant, such as ringing the doorbell only once and then walking away. The state supreme

20   court may have reasonably denied this aspect of claim three on the basis that defense

21   counsel, faced with the pre-trial ruling of the admissibility of the prior conviction evidence,

22   made a tactical decision to concede intent, rather than risk losing credibility with the jury,

23   by arguing Petitioner's actions did not establish intent. See id. ("There are countless ways

24   to provide effective assistance in any given case. Even the best criminal defense attorneys

25   would not defend a particular client in the same way."). In light of the overwhelming

26   evidence of intent, and the jury instruction limiting the use of the evidence regarding the

27   prior convictions to the issue of intent, Petitioner has not overcome his heavy burden of

28   showing that it was not sound trial strategy for defense counsel to concede intent and argue

16cv2793-BTM (MSB)

Petitioner abandoned his intention to burglarize the house prior to taking a direct step toward the commission of a burglary, such as breaking a window or entering the backyard. Id.; see also Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (recognizing a strong presumption that counsel took actions "for tactical reasons rather than through sheer neglect") (citing Strickland, 466 U.S. at 690) (holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment).

Petitioner next contends defense counsel presented a legally invalid defense that he abandoned his attempt to commit a burglary after committing a direct act in furtherance of the burglary, essentially conceding guilt because the jury was instructed that abandoning the effort to burglarize the house after committing a direct act in furtherance of the burglary was not a defense to the charge of attempted burglary. However, defense counsel clearly argued Petitioner was innocent of attempted burglary because he abandoned his intention of burglarizing the house before taking a direct but ineffective step toward the commission of a burglary. To the extent Petitioner argues his actions that day have no reasonable interpretation other than constituting a direct but ineffective step toward the commission of a burglary, he would essentially be admitting guilt, as any contention that such actions did not also support a finding of intent is not a viable argument for the reasons discussed in claim one. Accordingly, defense counsel did not present a legally invalid defense, and Petitioner has not established ineffective assistance in this respect. See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

Finally, Petitioner argues counsel should have presented a defense that he knocked on the door believing he was looking for or reporting for work that Friday, which he contends was a viable defense in light of his limited intellectual functioning, his police statement, and the evidence presented at trial that he had been working in the neighborhood with a work crew all week. Petitioner told the police he was looking for work and rang the doorbell only once before walking away when no one answered, but the occupant testified

he rang the doorbell 25 times, knocked that many times, jiggled the door handle, leaned against the door with his shoulder, looked suspiciously at the window, walked around the side of the house and moved trash cans from in front of the gate leading into the backyard. The prosecutor did not present Petitioner's police statement to the jury, but almost certainly would have had Petitioner testified, and Petitioner does not indicate how such a defense would have been presented without his testimony or police statement.  Thus, the state supreme court may have rejected this aspect of claim three on the basis that defense counsel could have reasonably determined such a defense would fail because it relied on the jury finding Petitioner was more credible than the occupant of the house, a nearly impossible hurdle given his prior felony convictions involving similar behavior and the lack of any motive for the occupant to lie.  Defense counsel in fact argued to the jury that the occupant was frightened and therefore may have merely presumed Petitioner was trying to enter the house, and because she did not mention on the 911 call that he tried to force his way in and had looked suspiciously at a window she may have imagined those things by the time she testified.  The defense as presented, that Petitioner did not take a direct but ineffective step toward committing burglary, did not rely on his credibility, was consistent with the nearly unassailable conclusion that his prior burglary convictions and his actions that day evinced an initial intent to burglarize the house, and in fact attempted to turn the tables on the prosecutor by using the prior convictions to show Petitioner abandoned the effort to burglarize the house prior to taking the type of direct step he had taken during his prior burglaries.  The note from the jury indicating they may need help determining what constitutes a direct step and requesting a replay of the 911 call and a read back of defense counsel's closing argument, are indications the jury seriously considered the defense. Petitioner has not shown his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The Court finds claim three is exhausted, and recommends denying habeas relief on the basis that the silent denial by the state supreme court is neither contrary to, nor an

unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.

### E.    Evidentiary Hearing

In his Traverse, Petitioner states that his claims "may also require an evidentiary hearing." (ECF No. 37 at 7.) The Court recommends denying Petitioner's request for an evidentiary hearing because such a hearing is not necessary where, as here, the federal claims can be denied on the basis of the state court record. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief [under § 2254(d)], a district court is not required to hold an evidentiary hearing.").

## V.    **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered denying the First Amended Petition for a Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **June 28, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 12, 2019.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: May 13, 2019

Honorable Michael S. Berg
United States Magistrate Judge